UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREAS MOUCHAS, *individually and on
behalf of all others similarly situated*,

                              Plaintiff,                    **ORDER**
                                                           24 CV 2221 (AMD) (CLP)

            -against-

UNDER PRESSURE COFFEE INC., *et al.,*

                              Defendants.

-------------------------------------------------------------X

IN RE MONOGIOUDIS                            25 MC 2367 (AMD) (CLP)

-------------------------------------------------------------X
POLLAK, United States Magistrate Judge:


On March 26, 2024, plaintiff Andreas Mouchas filed a Complaint against defendants

Under Pressure Coffee Inc. ("Under Pressure"), Coffee Warship Inc. ("Coffee Warship"), and

Michael Papadopoulos, alleging wage and hour violations under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, and the New York Labor Law § 190, et seq. ("NYLL").  Plaintiff

also brought FLSA collective action claims against defendant Under Pressure and class action

claims under the NYLL, pursuant to Federal Rule of Civil Procedure 23.  Currently pending

before this Court is defendants' motion to compel Mouchas' responses to post-deposition

discovery requests.  (See Mouchas Mot.[1]).

On May 9, 2025, defendants served a subpoena duces tecum on non-party Giorgos

Monogioudis, a former director of the defendant corporations and plaintiff's alleged current

employer.   (ECF No. 21 at 1; see also In re Monogioudis, No. 25 CV 2367, ECF No. 3

---

[1] References to "Mouchas Mot." refer to defendants' motion to compel filed on July 1, 2025, in Mouchas v. Under Pressure Coffee Inc., No. 24 CV 2221, ECF No. 22 (E.D.N.Y.).

(E.D.N.Y.)).  Rather than filing his opposition papers in the initial action, Mr. Monogioudis, proceeding *pro se,* filed a separate action, assigned Docket No. 25 MC 2367, in which he moves to quash defendants' subpoena duces tecum.  (Monogioudis Opp.[2] at 1).  Mr. Monogioudis' motion to quash is also pending before the undersigned.

Since the two pending motions raise similar issues and require the same analysis, the Court has addressed both motions in the instant Order.

<u>BACKGROUND</u>

From approximately July 2019 through approximately March 23, 2023, plaintiff was hired and supervised by defendant Papadopoulos as a barista and delivery driver at two locations owned by defendants: Under Pressure Coffee and Under Pressure Espresso Bar Whitestone.  (Compl.[3] ¶¶ 5, 29, 32-39, 58-64).  According to defendants, non-party Giorgios Monogioudis is a former director of the defendant businesses who had direct involvement in the companies' wage practices.  (Monogioudis Opp. at 1).  He is also alleged to be plaintiff's current employer.  (<u>See</u> Mouchas Mot. at 2).

On March 26, 2024, plaintiff brought this action alleging wage violations under the FLSA and NYLL.  (<u>See generally</u> Compl.).  Specifically, plaintiff alleges that defendants failed to pay a spread of hours premium for days in which he worked more than ten hours in a given day, that he was frequently paid late—more than seven days after the work week ended—and that defendants deducted $1,000 per week from plaintiff's paychecks for seven weeks in February and March

---

[2] References to "Monogioudis Opp." refer to defendants' opposition to the motion to quash filed on July 1, 2025 in <u>In re Monogioudis</u>, No. 25 CV 2367, ECF No. 3.

[3] References to "Compl." refer to the complaint filed in <u>Mouchas v. Under Pressure Coffee, Inc.</u>, No. 24 CV 2221, ECF No. 1.

2023.  (Compl. ¶¶ 65, 69-75).  He also alleges that defendants did not keep accurate payroll records and failed to provide employees with wage statements or paystubs.  (Compl. ¶¶ 76-92).

Although Mr. Monogioudis is not named in the Complaint, defendants allege in their motion papers that while he was working at the defendant businesses, Monogioudis not only set the illegal wage practices about which plaintiff now complains, but after resigning from his position at the defendant businesses, he employed plaintiff at a competing location while plaintiff was supposedly on the clock at the defendant businesses.  Defendants also allege Monogioudis colluded with plaintiff to bring this litigation to harm his competitors.  (Monogioudis Opp. at 7–12).

The case was referred to mediation on June 26, 2024, but the mediation did not result in a successful settlement.  See Mouchas v. Under Pressure Coffee, Inc. No. 24 CV 2221, ECF No. 15.  Following the mediation, on May 7, 2025, the Court held a status conference and ordered the parties to complete post-deposition discovery and to serve third-party subpoenas by May 9, 2025.  (See id. at Minute Entry 5/8/2025).

A.  Motion to Compel

On July 1, 2025, defendants filed a motion to compel plaintiff's responses to post-deposition document requests, asserting that plaintiff had served a deficient discovery response on June 17, 2025, by not responding to Request Nos. 8, and 18-29.  (See Mouchas Mot. at 1–2).  The requests seek communications between plaintiff and third parties, including plaintiff's current employer, Mr. Giorgos Monogioudis, about defendants, this lawsuit or plaintiff's employment elsewhere while he was simultaneously employed by defendants (Request Nos. 8,[4]

---

[4] Request No. 8 seeks communications between plaintiff and his current employer about any dispute between plaintiff and defendant Papadopoulos.  Contrary to defendants' assertions that plaintiff failed to respond to this Request, plaintiff's response first objects on the grounds that the request seeks to obtain information about plaintiff's

22-25[5]); communications and documents, including tax filings, reflecting any income or gain from the sale of a black smart car that defendant Papadopoulos allegedly purchased for plaintiff and that plaintiff and defendants sold together (Request Nos. 1-7, 10-18); documents related to a joint venture entered into between defendant Papadopoulos and plaintiff[6] (Request Nos. 19-21[7]); documents related to the date, location, bank and account where plaintiff first opened a bank account in the United States (Request Nos. 27, 28, 29); and records relating to plaintiff's efforts to obtain a Taxpayer ID (Request No. 26). (Mouchas Mot. Ex. A[8]). Defendants also served one request seeking documents reflecting plaintiff's immigration status and work authorization but withdrew the request prior to filing their motion to compel (Request No. 30). (Id. See also Mouchas Mot. at 1).

Defendants argue that after Monogioudis ceased working with defendants, he encouraged plaintiff to pursue litigation against the defendants – now his competitors – even though Monogioudis had been personally involved in defendants' wage practices. Defendants argue that the Monogioudis communications are also "anticipated to show that Plaintiff performed work for

---

current employer to harass or intimidate plaintiff, but then the response indicates that plaintiff has "none in his possession." (ECF No. 22-3, #8).
[5] Request No. 22 seeks documents between plaintiff and Monogioudis from January 2022 to present concerning opening a coffee shop business, plaintiff's role and compensation, use of defendants' vendor lists, pricing or employee recruitment. (ECF No. 22-3, # 22). Request Nos. 23 and 24 seek all contracts, agreements, offer letters or job descriptions relating to plaintiff and any business or operated by Monogioudis (Id., ## 23, 24). Request No. 25 seeks all documents showing financial or legal support provided by Monogioudis to plaintiff related to the lawsuit. (Id., #25). Again, as with Request No. 8, although plaintiff objected to all of these requests, he also indicated that he had "none in his possession." (Id., #8, 22-25).
[6] Defendants' document requests seek documents concerning joint ventures plaintiff entered into with defendant Papadopoulos and separately with Mr. Monogioudis. Defendants have not provided any details indicating whether there were, in fact, two ventures, or if this was simply a typographical error. As such, the Court construes defendants' motion as a request to compel documents concerning both alleged ventures.
[7] The remaining requests in dispute – Request Nos. 18, 19-21 and 26-29 – while objected to by plaintiff, were also responded to with a statement that no responsive documents were in plaintiff's possession.
[8] References to "Mouchas Mot. Ex. A" refer to defendants' post-deposition discovery requests, attached to defendants' motion to compel as Exhibit A. See Mouchas v. Under Pressure Coffee, Inc., No. 24 CV 2221, ECF No. 22-1.

4

Mr. Monogioudis while simultaneously claiming to be employed full-time by Defendants, which bears directly on the accuracy of Plaintiff's wage claims."[9]  (Mouchas Mot. at 2).

Defendants contend that the plaintiff's tax filings related to the sale of the car are "central to the disputed compensation structure and the credibility of Plaintiff's wage claims," in that there was private arrangement between defendant Papadopoulos involving a black Smart car purchased for plaintiff's use and later sold by the parties.  (Id.)  As with the alleged working relationship with Monogioudis, defendants' allegations as to the significance of this car purchase are vague, seemingly suggesting that the vehicle was intended by both parties to be part of plaintiff's compensation in lieu of actual wages.  Similarly, defendants seek documents relating to any business venture that plaintiff had with defendant Papadopoulos, as "relevant to Plaintiff's expectations and are anticipated to contradict his wage damages."  (Id.)  Defendants argue that the requests are narrowly tailored to determine "whether the alleged wage underpayment was offset by alternative forms of compensation or financial arrangements."  (Id.)

Defendants seek the Taxpayer ID and bank record documents, arguing that they speak to a "central defense theory" – namely, that plaintiff insisted on being paid in cash because he lacked work authorization and was unable to open a bank account during the relevant period. (Id. at 1).  Defendants seek these records in order to argue that plaintiff's method of payment and lack of formal compensation records were a result of his own limitations rather than alleged unlawful practices by defendants.  (Id.)

---

[9] Defendants provide these cursory accusations about Mr. Monogioudis without any specific allegations as to when Mr. Monogioudis worked for defendants, resigned from that position, or hired plaintiff.  They do not provide a single detail about the policies and practices he allegedly established or influenced.  In fact, Mr. Monogioudis is not named in any of the pleadings or motions filed in this case until now.  This defense, therefore, has failed to provide any basis upon which the Court could evaluate these accusations.

Plaintiff argues that many of the requests are an impermissible "back-door method of making Plaintiff's immigration status an issue later in this litigation" because his ability to obtain a Taxpayer ID or bank account are contingent on his immigration status. (Mouchas Opp.[10] at 1). His immigration status, plaintiff argues, is not only irrelevant, but considerably prejudicial. (Id. at 2). Plaintiff also contends that the Court should deny the request to compel tax filings reflecting income or gain from the sale of the car because they are irrelevant and not discoverable. (Id. at 3–4). In addition, plaintiff argues that his tax filings are irrelevant to the matters in this case and are more prejudicial than probative. (Id.). Plaintiff also argues that any discovery into his alleged insistence to be paid in cash is not relevant because defendants had an obligation to maintain payroll records under N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.1, even if he was paid in cash. (Id. at 3). Plaintiff then argues that communications between him and his other employer, Mr. Monogioudis, are wholly irrelevant to the issue of whether plaintiff received adequate compensation from defendants. (Id. at 4–5). Regarding bank records, plaintiff argues that the records are irrelevant in a FLSA action because they are, again, wholly irrelevant to the issue of whether plaintiff received adequate compensation from defendants, and it is defendants' obligation under the federal and state law to maintain the proper records (Id. at 5–6).

B. Motion to Quash and Request for a Protective Order

Prior to serving plaintiff with their post-deposition document demands, defendants served a subpoena for documents on Mr. Monogioudis on May 9, 2025, with a response due by June 13, 2025. See Monogioudis Opp. at 2. The requests seek documents relating to plaintiff's employment with Mr. Monogioudis, including plaintiff's payroll records (Request Nos. 1, 2, 3, 9,

---

[10] References to "Mouchas Opp." refer to plaintiff's opposition to the motion to compel filed on July 17, 2025. See Mouchas v. Under Pressure Coffee, Inc., No. 24 CV 2221, ECF No. 23.

10); communications between plaintiff and Mr. Monogioudis regarding this litigation (Request Nos. 4 and 5); documents concerning a joint venture between plaintiff and Mr. Monogioudis (Request Nos. 6 and 7); communications from Mr. Monogioudis regarding defendants (Request No. 8); documents containing information about Mr. Monogioudis' coffee shop (Request No. 11); and documents concerning Mr. Monogioudis' involvement with the defendant businesses (Request Nos. 12, 13, 14). (See generally Monogioudis Ex. A[11]).

On June 13, 2025, Mr. Monogioudis, proceeding *pro se*, opened a related case, In re Monogioudis, No. 25 MC 2367, wherein he filed the instant motion to quash the subpoena, arguing that the requests were duplicative, not relevant, and propounded in bad faith. (Monogioudis Mot.[12] at 1–2). He asks the Court to quash the subpoena and issue a protective order. (Id. at 2). Defendants filed an opposition to the motion to quash on July 1, 2025. (See Monogioudis Opp.).

## DISCUSSION

A. Motion to Compel

"Motions to compel and motions to quash are entrusted to the sound discretion of the district court." In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)); Ehrlich v. Incorporated Vill. of Sea Cliff, No. 04 CV 4025, 2007 WL 1593211, at *2 (E.D.N.Y. May 31, 2007). A trial court's rulings with regard to discovery "are reversed only upon a clear showing of an abuse of discretion." Id., at *2 (quoting In re DG Acquisition Corp., 151 F.3d 75, 79 (2d Cir. 1998)). The party moving

---

[11] References to "Monogioudis Ex. A" refer to the subpoena attached to defendants' opposition to the Monogioudis motion to quash as Exhibit A. See In re Monogioudis, No. 25 MC 2367, ECF No. 3-2.
[12] References to "Monogioudis Mot." refer to the non-party Giorgos Monogioudis' motion to quash filed on June 13, 2025. See In re Monogioudis, No. 25, MC 2367, ECF No. 1.

to quash a subpoena has the burden of establishing "that the information that is the subject of the subpoena is not discoverable." de Venustas v. Venustas Int'l, LLC, No. 07 CV 4530, 2008 WL 619028, at *2 (S.D.N.Y. Mar. 5, 2008) (citing Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery in federal court cases. Rule 26(b)(1) "authorizes discovery of any 'nonprivileged matter that is relevant to any party's claim or defense….Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" Garcia v. Benjamin Grp. Ent. Inc., 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L.Ed.2d 253 (1978)). While the scope of discovery is "broad," it is not "limitless." Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). "'Evidence that is irrelevant or may result in undue prejudice is outside the scope of discovery.'" Lopez v. Guzman, No. 17 CV 1668, 2018 WL 1141132, at *1 (E.D.N.Y. Nov. 27, 2018) (quoting Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015)). Discovery may not be used "'to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" Crosby v. City of New York, 269 F.R.D. at 282 (quoting In re Fontaine, 402 F. Supp. 1219, 1221 (S.D.N.Y. 1975)). Further, as specified in the amended Rule 26, discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Thus, Rule 26(b)(2)(c) requires the Court to limit the extent of discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit."

1. Documents Relating to Immigration Status, Bank Accounts, and Taxpayer ID (Request Nos. 26-29)

Defendants argue that documents related to plaintiff's immigration status and work authorization speak to their defense that plaintiff insisted on being paid in cash due to his lack of work authorization and inability to open a bank account. (Mouchas Mot. at 1). Although defendants have already withdrawn one request explicitly seeking documents reflecting plaintiff's immigration status and authorization to work in the United States (see id.), defendants still request information regarding plaintiff's Taxpayer ID and ability to open a bank account. (See Mouchas Mot. Ex. A at Request Nos. 26-29). Specifically, defendants seek documents revealing when plaintiff first opened a bank account in the United States, including evidence of his first deposit, any rejected applications for opening an account, and emails and communications with banks. (Id. at Request Nos. 27-29). They contend that whether plaintiff had a bank account is probative of whether plaintiff requested to be paid in cash. (See Mouchas Mot. at 1; Mouchas Reply at 3). Plaintiff argues that these requests are actually a back-door to attempt to obtain documents revealing his immigration status. (Mouchas Opp. at 1).

It is well settled in the Second Circuit that a plaintiff's immigration status is not relevant to FLSA and NYLL cases. See Lopez v. Guzman, No. 17 CV 1668, 2018 WL 11411132, at *2 (E.D.N.Y. Nov. 27, 2018), aff'd, 2021 WL 4033574 (E.D.N.Y. Sept. 3, 2021); Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d at 9–10; Rodriguez v. Pie of Port Jefferson Corp., 48 F. Supp. 3d 424, 426 (E.D.N.Y. 2014); Colon v. Major Perry St. Corp., 987 F. Supp. 2d 451, 464 (S.D.N.Y.

2013) (finding plaintiffs' immigration status "irrelevant and impermissible" for both FLSA and NYLL wage and hour claims and therefore denying discovery request); Corona v. Adriatic Italian Rest. & Pizzeria, No. 08 CV 5399, 2010 WL 675702, at *1 (S.D.N.Y. Feb. 23, 2010) (finding "plaintiffs' immigration status will have no bearing on…whether the plaintiffs were compensated in accordance with applicable state and federal wage and hour statutes, for the work they performed"). "Accordingly, 'courts addressing the issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be undiscoverable.'" Rodriguez v. Pie of Port Jefferson Corp., 48 F. Supp. 3d at 426 (quoting Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002)).

An employee's immigration status has absolutely no bearing on whether his employer paid him properly. In fact, holding otherwise would contradict "not only the policy underlying the FLSA [and the NYLL] but also federal immigration policy" of "protect[ing] workers from substandard wages, and to prevent the payment of substandard wages from being used as an unfair method of competition against law-abiding competitors." Solis v. Cindy's Total Care, Inc., No. 10 CV 7242, 2011 WL 6013844, at *3 (S.D.N.Y. Dec. 2, 2011) (quotation omitted). Allowing discovery into immigration status in a FLSA or NYLL litigation would have a "chilling effect" because "it is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face…potential deportation.'" Uto v. Job Site Servs. Inc., 269 F.R.D. 209, 211–12 (E.D.N.Y. 2010) (quoting Topo v. Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002)). Thus, such discovery is excludable because "'the potential for prejudice far outweighs whatever

minimal probative value such information would have.'" Id. (quoting Flores v. Amigon, 233 F. Supp. 2d 462, 464–65 (E.D.N.Y. 2002)).

Although defendants have withdrawn their only explicit request for immigration-related documents, their requests for plaintiff's Taxpayer ID and banking information implicitly seek the same. Whether plaintiff asked defendants to be paid in cash, and for what reason, is not going to be proven through plaintiff's efforts to obtain a Taxpayer ID or through his banking records. Even if defendants could demonstrate that plaintiff had no Taxpayer ID and no bank accounts, that information is highly prejudicial in that it might lead the jury to conclude that plaintiff was not here legally or that he was trying to avoid paying taxes. Whatever minimal relevance these records may have to support defendants' contention that plaintiff requested to be paid in cash does not overcome the significant prejudice that may occur. More critically, however, regardless of whether plaintiff requested payment in cash, defendants were still obligated under the law to pay plaintiff proper wages and to maintain the records of all hours worked and wages paid to plaintiff. See N.Y. Comp. Codes R. & Regs., tit. 12 § 146-2.1 (requiring employers to keep payroll records of wages, including regular and overtime hourly wages; the amount of gross wages; deductions from gross wages; the amount of net wages; and money paid in cash.). Any lack of required records cannot be overcome by suggesting that plaintiff may have requested to be paid in cash. Accordingly, the Court denies defendants' request to compel the production of documents responsive to Request Nos. 26-29, relating to plaintiff's Taxpayer ID or bank account.

2. Tax Documents (Request No. 18)

Defendants ask the Court to compel the production of plaintiff's tax filings reflecting income or gain from the joint sale of a black smart car by defendant Papadopoulos and plaintiff. (Mouchas Mot. Ex. A at Request No. 18).

Tax filings are subject to civil discovery.  See United States v. Bonanno Organized Crime Fam., 119 F.R.D. 625, 627 (E.D.N.Y. 1988).  Still, courts are generally reluctant to order the production of personal financial documents and have imposed a heightened standard for the discovery of tax filings.  See Chen v. Republic Rest. Corp., No. 07 CV 3307, 2008 WL 793686, at *2 (S.D.N.Y. Mar. 26, 2008) (holding that "[a]lthough tax returns are not privileged documents, Court[s] are reluctant to order their discovery in part because of the 'private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns'") (quoting Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)).  To protect the privacy interests surrounding the sensitive information contained in tax filings, courts use a two-part test before compelling their production: "'(1) the tax returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a less intrusive source.'" Melendez v. Primavera Meats, Inc., 270 F.R.D. 143, 144 (E.D.N.Y. 2010) (quoting Sadofsky v. Fiesta Prods., LLC, 252 F.R.D. 143, 149 (E.D.N.Y. 2008)).  The burden of satisfying that test falls on the party seeking production of the tax filings.  Id.

Here, defendants contend that defendant Papadopoulos entered into "financial arrangements" with plaintiff to allow for plaintiff's use, and eventual purchase, of a black Smart car.  (Mouchas Mot. at 3).  Plaintiff testified that defendant Papadopoulos purchased the vehicle for him, and he repaid Papadopoulos through weekly deductions of his salary.  (Mouchas Reply

Ex. A[13] at 32:9-33:14).  According to plaintiff's testimony, Papadopoulos and plaintiff later sold the vehicle and split the proceeds of the sale, with Papadopoulos paying plaintiff his share of the proceeds through an addition to his pay.  (Id. at 44:10-45:15).  Plaintiff also testified that there was no documentation outlining the arrangement and that it was not a term of his employment. (Id. at 43:2-44:3).  Defendants argue that the tax filings are necessary because the lack of documentation surrounding the sale of the car is "simply not credible" (Mouchas Mot. at 3), and that "[w]hether Plaintiff reported income or gain from the sale of the car" speaks to the veracity of his wage claims.  (Mouchas Reply[14] at 2).

Defendants' contentions do not satisfy the test for requiring production of plaintiff's tax filings.  First, defendants have not demonstrated that tax records will contain the information they are seeking or would be relevant to any issue in the case.  Defendants contend that the tax records are necessary to explore the parties' understanding of a financial arrangement dealing with the sale of a black smart car, but that understanding would not be reflected in a tax filing.[15] Whether plaintiff disclosed the sale of the vehicle on his tax filings speaks only to whether he accurately filed his taxes.  It does little, if anything, to undermine his wage claims.

Second, even if the documents were relevant, defendants have not shown a compelling need for production.  To the extent the sale of the car affected plaintiff's wages, Papadopoulos's

---

[13] References to "Mouchas Reply Ex. A" refer to the transcript of the deposition of plaintiff, attached to plaintiff's reply in support of the motion to compel as Exhibit A.  See Mouchas v. Under Pressure Coffee, Inc., No. 24 CV 2221, ECF No. 24-1 (E.D.N.Y.).

[14] References to "Mouchas Reply" refer to defendants' reply filed on July 23, 2025 in support of the motion to compel.  See Mouchas v. Under Pressure Coffee, Inc., No. 24 CV 2221, ECF No. 24.

[15] It is also possible plaintiff's tax filings would not even include the sale of the car.  Cars owned for personal use are capital assets that are usually sold at a loss.  Losses from the sale of personal use property are not tax-deductible. See Sales and Other Dispositions of Assets, I.R.S. Pub. 544 at 30, 33 (2024).  To the extent the vehicle was sold at a loss, it is likely it was not reported on any tax filing.  Even if it was reported on plaintiff's tax returns, simply reporting the sale of the car as a gain or loss provides no information regarding the nature of the agreement between the parties, nor would the returns reflect any information to support defendants' contention that the car constituted an alternative form of wages to plaintiff.  Indeed, in the absence of any written agreement between plaintiff and defendants specifying that the car was provided to plaintiff in lieu of plaintiff's statutorily mandated wages, the purchase and sale of the vehicle is not relevant to the claims in this case.

own tax records could provide that information.  See D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2012 WL 6138481, at *3 (E.D.N.Y. Dec. 11, 2012) (holding that "the discovery of a plaintiff's tax returns in an FLSA case is generally not warranted as the information sought is at best only minimally relevant and can be more readily obtained from a less intrusive source, namely the defendant's own records").  Indeed, although defendants contend that plaintiff's lack of documentation surrounding this car is "simply not credible," as the employer, Papadopoulos would be the one responsible for documenting any alternative wage arrangement with his employee, and yet the Court has been told that no such documents exist, hence justifying the production of tax return information.  Further, plaintiff testified that he sold the car together with defendant Papadopoulos (Mouchas Reply Ex. A at 44:10-16), but defendants do nothing to explain why defendant Papadopoulos's own records are insufficient to show the purchase and sale of the vehicle and whether proceeds from those transactions constituted an alternative compensation arrangement with plaintiff.  Defendants also concede that plaintiff already testified to other sources for this information—namely, written communications surrounding repayment of the car – which defendant Papadopoulos would also presumably have.  (Mouchas Reply at 2).

Moreover, plaintiff has expressed concern that defendants' request for plaintiff's tax filings is another inappropriate attempt to obtain information about plaintiff's immigration status.  (Mouchas Opp. at 4).  Courts have expressed concerns that certain discovery requests for tax information may represent a party's "back-door effort to obtain immigration status."  Marquez v. Erenler, Inc., No. 12 CV 8580, 2013 WL 5348457, at *2 (S.D.N.Y. Sept. 20, 2013).  Indeed, "[t]hat alone is an adequate basis to deny the request."  Id.  Therefore, the Court finds that defendants have not carried their burden to demonstrate relevance and compelling need

necessary to obtain plaintiff's tax returns and denies defendants' motion to compel documents responsive to Request 18.

   3.   Records Regarding Other Employment (Request Nos. 8 & 22-25)

Defendants also seek documents and communications between plaintiff and his current employer, Giorgos Monogioudis, including contracts, documents relating to compensation, documents concerning a joint venture between plaintiff and Mr. Monogioudis, and documents showing any financial or legal support Mr. Monogioudis is providing to plaintiff related to this lawsuit.  (Mouchas Mot. Ex. A at Request Nos. 8, 22-25).  Many of these same requests are included in the documents requested through the subpoena duces tecum served upon Mr. Monogioudis.

Specifically, defendants contend that Mr. Monogioudis employed plaintiff at the same time plaintiff was supposed to be working for defendants, and that Mr. Monogioudis "encouraged [plaintiff] to pursue litigation against the Defendants, despite Mr. Monogioudis'[s] personal involvement in the alleged wage practices which are the subject of the complaint." (Mouchas Mot. at 2).

"Generally, information 'from or about plaintiffs' current employers is irrelevant in determining whether the defendant-employers violated wage and hour laws.'" Jibowu v. Target Corp., No. 17 CV 3875, 2018 WL 5282944, at *3 (E.D.N.Y. Sept. 17, 2018) (quoting Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. at 11).  See Chen v. SS & C Techs., Inc., Nos. 22 CV 2190, 2023 WL 2387112, at *4 (S.D.N.Y. Mar. 7, 2023) (finding subpoena into current employer was not discoverable in a NYLL action against former employer) (collecting cases).  However, defendants argue that Mr. Monogioudis is not the typical non-party to this action.  Instead, defendants allege that Mr. Monogioudis was a former partner at the defendant companies,

responsible for the companies' wage practices, and that he colluded with plaintiff to engage in improper wage violations.[16]  See Monogioudis Opp. at 10.

The claims in this case surround whether defendants' paid plaintiff the wages and overtime pay to which he is entitled, whether those wages were timely paid, and whether defendants provided accurate wage notices and statements.  (Compl. ¶¶ 112-165).  Plaintiff's communications and documents involving another employer are wholly irrelevant to those claims.  Defendants also allege that plaintiff was on the clock for defendants while actually spending his time working for Mr. Monogioudis.  (See Mouchas Reply at 3).  Defendants do not, however, discuss why plaintiff, rather than his employer, would be the custodian of these records.  The Court therefore denies defendants' request to compel plaintiff to produce documents responsive to Requests 8, 22, and 23.

Request 24, however, goes even further.  That request seeks business plans, entity formation documents, and promotional materials involving plaintiff and Mr. Monogioudis.  This request seeks information about a competitor not germane to the wage claims at issue in this case.  Accordingly, the Court denies defendants' request to compel production of documents responsive to Request 24.

Regarding defendants' Request 25, seeking documents showing Mr. Monogioudis' financial support for this litigation, litigation funding is generally irrelevant.  See Benitez v. Lopez, No. 17 CV 3827, 2019 WL 1578167, at *1 (E.D.N.Y. March 14, 2019) (denying discovery of litigation funding documents where defendants "fail[ed] to establish that such

---

[16] Although defendants claim that documents and communications involving Mr. Monogioudis would "demonstrate a coordinated effort to undermine Defendants from within" (Monogioudis Opp. at 8), they do not explain this "coordinated effort" in any way or describe in any detail what improper wage practices would require (or even allow for) plaintiff's collusion.  Even if Mr. Monogioudis was responsible for the defendants' wage practices while he was employed by defendants, there has been no showing of what steps plaintiff allegedly took to further this collusion.

discovery is relevant to any party's claim or defense") (quotation omitted); Kaplan v. S.A.C. Cap. Advisors, L.P., No. 12 CV 9350, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2014), aff'd, 141 F. Supp. 3d 246 (S.D.N.Y. 2015); Carroll v. Trump, 124 F. 4th 140, 172–73 (2d Cir. 2024) (holding that extrinsic evidence of litigation funding was properly excluded where it had "minimal, if any, probative value of [plaintiff's] bias and motive").  That plaintiff's current employer allegedly encouraged him to pursue litigation has no bearing on the claims or defenses in this case.  Apart from alleging that plaintiff currently works for a former partner in the defendant companies, defendants have made no credible showing of how plaintiff may have colluded with Monogioudis to engage in wage violations.  Even if Monogioudis, defendants' partner at the time engaged in wage violations, defendants fail to explain how this supports their proposed liability defense.  The Court therefore denies defendants' motion to compel responses to Request 25.

4.  Joint Venture (Request Nos. 19-21)

Defendants seek documents concerning a business venture plaintiff allegedly testified to entering with defendant Papadopoulos.  The requests encompass documents reflecting the opening of businesses, equity or partnership discussions, business plans, operating agreements, investor pitch decks, and capital contributions.  (Mouchas Mot. Ex. A at Request Nos. 19-21). They argue that these documents are "relevant to Plaintiff's expectations and are anticipated to contradict his claimed wage damages."  (Mouchas Mot. at 2).

Defendants fail to point to any nexus between this alleged joint venture and any claims or defenses in this case.  Additionally, all of these documents should already be in defendant Papadopoulos's possession.  Accordingly, the Court denies defendants' motion to compel production of these documents.

17

B. <u>Motion to Quash</u>

In addition to the requirements of Rule 26 discussed above (supra 8–9), Rule 45 governs

the use of subpoenas in civil cases.  Federal Rule of Civil Procedure 45 sets forth the grounds

upon which a party may move to quash a subpoena. Specifically, the rule provides:

> On timely motion, the issuing court must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that .... the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
> (iii) requires disclosure of privilege or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Subpoenas under Rule 45 are not intended to provide an "end-run around the regular

discovery process under Rules 26 and 34." <u>Burns v. Bank of Am.</u>, No. 03 CV 1685, 2007 WL

1589437, at *14 (S.D.N.Y. June 4, 2007).  Additionally, "[i]f documents are available from a

party, it has been thought preferable to have them obtained pursuant to Rule 34 rather

than subpoenaing them from a non-party witness pursuant to Rule 45." <u>Id.</u> (citation omitted).

Mr. Monogioudis makes no argument that he has not had reasonable time to comply, and,

given that the subpoena only seeks documents, he has not objected on the grounds that he would

be required to travel more than 100 miles from where he resides.  Instead, he argues that the

requests are irrelevant, duplicative, and unnecessarily burdensome, that the requests were

propounded in bad faith to harass or intimidate him, and that the subpoena seeks proprietary and

confidential business records.

1.   Request Nos. 1, 2, 3, 9, and 10

Defendants seek documents relating to employment and payroll records regarding plaintiff's employment at Mr. Monogioudis' business.  The requests seek documents concerning the hiring or employment of plaintiff (Request No. 1); plaintiff's timecards, shift schedules, payroll records or paystubs (Request No. 2); documents reflecting plaintiff's job titles and responsibilities (Request No. 3); plaintiff's weekly hours worked and Mr. Monogioudis' method of compensation (Request No. 9); and records of tips, bonuses, salary advances, or informal cash payments made to plaintiff (Request No. 10).

Defendants argue that these requests are necessary to establish the terms and conditions of plaintiff's employment, work hours, and compensation, and that such documents are "essential to test Plaintiff's credibility and to assess whether he was employed elsewhere during the period he claims to have worked excessive hours for Defendants."  (Monogioudis Opp. at 6–7).

As discussed, information about a plaintiff's current employer is generally not discoverable in FLSA and NYLL cases.  (Supra 15–17).  However, defendants also allege that plaintiff was on the clock for defendants while actually spending his time working for Mr. Monogioudis.  (See Mouchas Reply at 3).  Thus, defendants' requests for timecards and shift schedules may be relevant.[17]  Moreover, because Mr. Monogioudis, as plaintiff's employer, should have access to these records, the request is not unduly burdensome.  However, requests seeking information from Mr. Monogioudis about how plaintiff was hired, how he was paid, and his job responsibilities have no relevance to the issues in this case.

---

[17] Defendants' subpoena specifies that the requests are limited to the period of January 1, 2019 to present.  (See Monogioudis Ex. A at 5).  However, because plaintiff was not employed with defendants prior to July 2019 and because documents about plaintiff's current employment are not relevant outside of this defense, this period is overly broad.  Therefore, documents responsive to this request but which fall outside of plaintiff's dates of employment with defendants are not relevant and the Court does not compel their production.

Accordingly, the Court grants Mr. Monogioudis' request to quash Request Nos. 1, 3, 9, and 10, but denies Mr. Monogioudis' request to quash Request No. 2 limited to the period of plaintiff's employment with defendants.

2. Request Nos. 4-8

Defendants seek documents to establish whether plaintiff's claims were influenced by personal, strategic, or retaliatory motives unrelated to actual wage violations. (Monogioudis Opp. at 8). These requests include documents showing Mr. Monogioudis' financial support for this litigation (Request No. 5), and communications between Mr. Monogioudis and plaintiff discussing defendants' business operations or alleged wage violations. (Request No. 4). Defendants also seek documents concerning a joint venture entered between plaintiff and Mr. Monogioudis (Request Nos. 6 and 7), and any communications in which plaintiff expressed hostility toward defendants or a desire to harm the defendant businesses. (Request No. 8).

Regarding defendants' request for documents showing Mr. Monogioudis' support for this litigation, as noted supra, third-party litigation support is generally irrelevant. (See discussion supra at 16–17). Having already considered this issue, the Court finds that Requests 4, 5, and 8 are not relevant to the claims or defenses at issue in this matter and should be quashed.

Requests 6 and 7 should also be quashed. These requests seek documents showing plaintiff's involvement in opening a coffee shop with Mr. Monogioudis and documents referencing plaintiff's attempts to recruit defendants' employees, contact defendants' customers, or use defendants' confidential business information. To the extent these requests seek to bolster their improper motive defense, defendants fail to make any showing of collusion. More likely, defendants seek to engage in a fishing expedition to shore up claims against Mr. Monogioudis for allegedly interfering with their business. If true, such an abuse of non-party discovery is

impermissible and far from a defense for the present wage claims in this case.  See 287 Franklin Ave. Residents' Ass'n v. Meisels, No. 11 CV 976, 2012 WL 1899222, at *4–5 (E.D.N.Y. May 24, 2012) (holding that "[t]he party seeking the discovery [against a non-party] must make a prima facie showing that the discovery sought is more than merely a fishing expedition" and "may not use discovery to uncover evidence that might support an as yet unasserted ... claim." ) (citations omitted); Palumbo v. Shulman, No. 97 CV 4314, 1998 WL 436367, at *5 (S.D.N.Y. July 24, 1998) (holding that "[d]iscovery is not to be used as a hunting license to conjure up a claim that does not exist.") (quotation omitted).  See also Neogenix Oncology, Inc. v. Gordon, 14 CV 4426, 2017 WL 1207558, at *10 (E.D.N.Y. Mar. 31, 2017) (denying non-party subpoena requests where "[d]efendant's entire premise rests upon nothing more than an *ipse dixit*.")

Accordingly, the Court grants Mr. Monogioudis' motion to quash Requests 4-8.

3.  Request No. 11

Defendants seek documents reflecting the formation of a coffee shop under the name "Maillard Coffee Roasters Inc."  Defendants do not, however, explain the relevance of this business.  If this business is, in fact, the joint venture plaintiff is alleged to have entered with Mr. Monogioudis, defendants have made no showing that the documents sought, including incorporation documents, lease agreements, records identifying the opening dates of the business, and documents identifying services offered at Maillard Coffee Roasters, have any relationship to the claims or defenses in this case.  Moreover, many of these documents are publicly available, including incorporation documents which are filed with the New York Secretary of State, and the services offered by the business which can be discovered by any customer simply walking through the shop's doors.  See Levin v. Johnson & Johnson, No. 16 CV 6631, 2017 WL 5592684, at *4 (E.D.N.Y. Nov. 20, 2017) (denying discovery requests for

publicly available information).  See also United States v. UBS Sec. LLC, No. 18 CV 6369, 2020

WL 7062789, at *10 (E.D.N.Y. Nov. 30, 2020) (denying document requests where movant could

not show why publicly available information was insufficient).

Accordingly, the Court grants Mr. Monogioudis' motion to quash Request 11.

4.  Request Nos. 12-14

Defendants seek documents reflecting Mr. Monogioudis' involvement with defendants

Under Pressure and Coffee Warship.  These requests include documents showing Mr.

Monogioudis' role as a partner in the business, his responsibility for wage decisions, tax filings

listing Mr. Monogioudis as an officer of the defendant companies, and documents depicting Mr.

Monogioudis' departure from the businesses.

Third-party subpoenas are not meant to provide an end-run around the regular discovery

process.  Burns v. Bank of Am., 2007 WL 1589437, at *14.  "'[I]f documents are available from

a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than

subpoenaing them from a non-party witness [pursuant to Rule 45].'"  Id. (quoting Hasbro, Inc. v.

Serafino, 168 F.R.D. 99, 100 (D. Mass. 1996)).  These are exactly the types of records that

defendants should already possess.  Additionally, defendants have not shown how records of Mr.

Monogiodis' employment at the defendant companies relates to whether plaintiff was properly

paid.  The Court therefore grants Mr. Monogioudis' motion to quash Request Nos. 12-14.


C.  Protective Order

Mr. Monogioudis states in his motion to quash that the "subpoena improperly seeks

access to proprietary and confidential business records" and asks the Court to issue a protective

order "preventing further harassing or irrelevant discovery requests against [him] as a third party." (Monogioudis Mot. at 2).

The movant seeking a protective order has the burden of demonstrating that good cause exists for the issuance of the order. See ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc., No. 08 CV 5737, 2009 WL 105503, at *2 (S.D.N.Y. Jan. 14, 2009) (quoting Dove v. Atlantic Cap. Corp., 963 F.2d 15, 19 (2d Cir. 1992)). The movant needs to show more than broad allegations of harm unsubstantiated by specific examples or articulated reasoning. Id. However, courts have used their discretion to protect proprietary documents from disclosure, and to protect a person from annoyance, embarrassment, oppression, or undue burden or expense, even where a movant avers documents are proprietary without further explanation. See, e.g., Duhaney v. TransUnion, LLC, No. 23 CV 4066, 2024 WL 85074, at *3 (E.D.N.Y. Jan. 8, 2024). Even in cases where there is no request for a protective order, federal courts may *sua sponte* grant a protective order if circumstances justify doing so. See, Seminara v. City of Long Beach, 68 F.3d 481, 1995 WL 598097, at *4 (9th Cir. Oct. 6, 1995) (holding that "[a] court may, if circumstances so justify, enter a protective order *sua sponte*"); McCoy v. Southwest Airlines Co., Inc., 211 F.R.D. 381, 385 (C.D. Cal. 2002) (finding Federal Rule of Civil Procedure 26(c) gives courts the discretion to enter a protective order *sua sponte*); Lesal Interiors, Inc. v. Resolution Tr. Corp., 153 F.R.D. 552, 558 n. 4 (D.N.J. 1994) (same); Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC, No. 19 CV 4684, 2020 WL 3103945, at *3 (D. Ariz. June 11, 2020) (recognizing discretion to enter protective order *sua sponte*); Smith v. Equifax Info. Servs., Inc., No. 04 CV 1660, 2005 WL 2660381, at *5 (D. Conn. Oct. 18, 2005) (same); Providence Tit. Co. v. Truly Tit., Inc., No. 21 CV 147, 2022 WL 17981500, at *3 (E.D. Tex. Sept. 29, 2022) (same). See also

Sokolski v. Trans Union Corp., 178 F.R.D. 393, 400 (S.D.N.Y. 1998) (*sua sponte* entering a protective order).

      Here, the movant asks the Court to issue a protective order preventing defendants from harassing him.  However, simply serving a subpoena does not amount to harassment.   The Court therefore denies Mr. Monogioudis' request for a protective order.  However, given the Court's finding of irrelevance relating to the Monogioudis documents and communications, the Court will quash any additional subpoenas served to Mr. Monogioudis absent a showing of good cause.

CONCLUSION

      For the reasons stated above, the Court denies defendants' motion to compel in its entirety.  The Court grants Mr. Monogioudis' motion to quash Request Nos. 1 and 3-14 of the subpoena duces tecum.  The Court denies Mr. Monogioudis' request to quash Request 2 and Orders him to provide timecards and shift schedules for the period of July 2019 through the end of plaintiff's employment with the defendant businesses.  The Court also denies his request for a protective order.

      The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

      **SO ORDERED.**

Dated: Brooklyn, New York
      October 28, 2025

            /s/ Cheryl L. Pollak
            Cheryl L. Pollak
            United States Magistrate Judge
            Eastern District of New York